IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kevin Wayne McDaniels, #254398, | C/A No.: 1:12-6-TLW-SVH |
| Plaintiff, | |
| vs. | |
| Matthew Zagula; RT Lowry, MD; A. Bryant, PA; Neil Stephens, RN; J. Vazquez, MD; Edgar Morales; Walter Dobushak; Mr. Crawford, MD; Irwin Fish, MD; Dr. Massa, MD; Dr. Loranth, MD; Mrs. Brown, PA; being sued in their individual and official capacity, | ORDER AND REPORT AND RECOMMENDATION |
| Defendants. | |

Kevin Wayne McDaniels ("Plaintiff"), a *pro se* prisoner in the custody of the federal Bureau of Prisons ("BOP"), filed this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971) against the above-captioned defendants. This matter comes before the court on the following motions: (1) Defendants' Motion to Dismiss [Entry #57], which is brought by all captioned defendants except Lowry; and Plaintiff's (2) motion for a temporary restraining order/preliminary injunction [Entry #45]; (3) motion to amend [Entry #46]; (4) motion to conduct a polygraph [Entry #49]; (5) motion to appoint an expert [Entry #55]; (6) motion for an order to show cause [Entry #75]; (7) motion for a preliminary injunction [Entry #76]; (8) motion for a transfer in South Carolina [Entry #80]; and (9) a motion for a preliminary injunction [Entry #82]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local

Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion to dismiss and motions for injunctive relief are dispositive, this Report and Recommendation is entered for the district judge's consideration.

I.    Factual and Procedural Background

Plaintiff originally brought this action against 46 defendants, including federal, state, and local governmental officials, employees and entities, as well as private individuals and entities. Pursuant to the order of the Honorable Terry L. Wooten, all but the above-captioned defendants have been dismissed. [Entry #39]. Therefore, Plaintiff's only remaining claim is a *Bivens* action for deliberate indifference to his serious medical needs against defendants.

Plaintiff was transferred to federal custody on September 2, 2009 and was transferred to USP-McCreary, a BOP facility in Kentucky. Compl. at 5 [Entry #38-6]. Plaintiff was subsequently transferred to USP-Coleman in Florida, USP-Hazelton in West Virginia, and then to his current location at FCI-Williamsburg in South Carolina. *Id*. Plaintiff alleges he has severe sleep apnea, which causes him to awake gasping, and defendants at each of these facilities disregarded his breathing problems. *Id*. at 31.

Plaintiff further claims defendants at FCI-Williamsburg have denied him: (1) surgeries and related treatment for his breathing conditions, heel spurs, and hemorrhoids; (2) the correct dosage of his Wellbutrin; and (3) his asthma inhalers. *Id*. at 17–19.

Defendants filed their motion to dismiss[1] pursuant to Fed. R. Civ. P. 12 on July 2,

---

[1] Although the motion is entitled a motion for summary judgment, it states it is filed pursuant to Fed. R. Civ. P. 12 and was filed in lieu of an answer.

2012. [Entry #57]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to defendants' motion. [Entry #58]. Plaintiff filed a timely response in opposition to defendants' motion on March 26, 2012. [Entry #81]. On August 14, 2012, the undersigned informed the parties of the court's intention to convert the motion to dismiss to a motion for summary judgment, as both parties presented matters outside of the pleadings, and provided Plaintiff an opportunity to submit any further pertinent information by August 28, 2012. [Entry #90]. Plaintiff submitted additional briefing on August 27, 2012. [Entry #95]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting defendants' motion.

II.     Discussion

    A.     Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). However, on a motion pursuant to Rule

12(b)(6), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d). Here, both parties have submitted affidavits and other materials outside of the pleadings for the court's review. Therefore, the court converts defendants' motion to dismiss to one for summary judgment.

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B. Analysis

1. Defendant RT Lowry

It does not appear from the docket that defendant Lowry has been served with the complaint. Lowry has not made an appearance in this action and has not joined in the instant motion. According to the motion, Dr. Lowry was a contract specialist who

4

provided services for the inmate population at USP-McCreary and was not a federal employee at any time. [Entry #57 at n. 2]. Therefore, it is not clear whether Plaintiff may maintain a *Bivens* claim against Lowry. As an initial matter, the court notes that it does not have personal jurisdiction over Lowry without service of process.

Plaintiff was previously advised that he is responsible for providing information sufficient to identify defendants on the Form(s) USM-285, that the United States Marshal cannot serve an inadequately-identified defendant, and that unserved defendants may be dismissed as parties to this case. [Entry #35]. Pursuant to Fed. R. Civ. P. 4(m), if a defendant has not been served within 120 days after the complaint is filed, the court may dismiss the action without prejudice against him after notice to Plaintiff. Plaintiff is hereby notified of the undersigned's recommendation that Lowry be dismissed without prejudice unless Plaintiff provides good cause for failing to timely effect service by the deadline for filing objections to this report.

        2.    Personal Jurisdiction of Zagula, Bryant, Stephens, Vazquez-Velazquez, Morales, and Dobushak

Defendants argue that the court cannot establish personal jurisdiction against defendants Zagula, Bryant, Stephens, Vazquez-Velazquez, Morales, and Dobushak (collectively "Foreign Defendants"). Plaintiff's claims against Zagula, Bryant, Stephens, and Vazquez-Velazquez[2] arise out of allegations of improper medical care while

---

[2] It appears that Plaintiff incorrectly identified Vazquez-Velazquez as defendant Vazquez. Although Plaintiff's initial complaint indicates Vazquez-Velazquez is liable for improper treatment at Hazelton [Entry #38-6 at 17], he does not appear to dispute the contention that Vazquez-Velazquez only saw him on one occasion at FCI-McCreary [Entry #81 at 20].

imprisoned at FCI-McCreary in Kentucky. Similarly, he alleges improper medical care by Morales while at FCI-Coleman in Florida and by Dobuschak while at FCI-Hazelton in West Virginia. Foreign Defendants argue that the court cannot exercise personal jurisdiction against them because they have never been stationed, employed, resided, or performed business transactions in South Carolina.

The court has conducted the necessary analysis under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and concludes that personal jurisdiction over these defendants is wanting. Personal jurisdiction arises out of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

There are two types of personal jurisdiction: general and specific. General jurisdiction is permissible under the due process clause when the defendant has an enduring relationship with the forum state, and his connection to and activities in the forum state are so substantial that the defendant would expect to be subject to suit there on any claim and would suffer no inconvenience from defending there. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952). A court has specific jurisdiction over a cause of action, which arises directly out of or relates to the defendant's forum state activities. *Id*. Because the South Carolina Supreme Court has held that the South Carolina long arm statute is deemed to reach the limits of due process, federal courts normally conduct a single inquiry under the due process clause. *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 657 n. 2 (4th Cir. 1989).

The United States Supreme Court articulated a two-branch due process test for

determining specific jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The first, the traditional minimum contacts branch, focuses on the defendant's connection with the forum state and the relationship between that connection and the litigation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985). The second branch is frequently referred to as the fairness, convenience, or reasonableness branch. Additionally, the Supreme Court has explained that due process requires further factual evaluation to determine whether an assertion of personal jurisdiction comports with fair play and substantial justice. *See Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

The plaintiff has the burden of establishing jurisdiction over the defendants. *New Wellington Fin. v. Flagship Resort Dev.*, 416 F.3d 290, 294 (4th Cir. 2005). Plaintiff has not provided any facts rebutting Foreign Defendants' claim that the court lacks personal jurisdiction. Plaintiff's claims against Foreign Defendants did not arise out of Foreign Defendants' contacts with South Carolina. [Entry #38-6 at 16–17]. Nor did Foreign Defendants purposefully avail themselves of the privilege of conducting business within the forum state or invoking the benefits and protection of its laws such that they could reasonably anticipate being haled in court in South Carolina. [Entry #57-1–#57-6]. Therefore, there is not a sufficient nexus between Foreign Defendants and South Carolina to support the exercise of personal jurisdiction over them. *See, e.g., Adden v. J.D. Middlebrooks*, 688 F.2d 1147, 1156 (7th Cir. 1982) (concluding that federal courts in Illinois had no personal jurisdiction over Louisiana prison officials sued for wrongful death committed in Illinois by escaped Louisiana convicts); *Johnson v. Rardin*, 952 F.2d

1401, 1401 (10th Cir. 1992) (unpublished) (BOP Director does not have sufficient minimum contacts with forum state to support personal jurisdiction); *Thornton v. Quinlan*, 864 F.Supp. 90, 92 (S.D.Ill. 1994) (declining to exercise jurisdiction over Director of Bureau of Prisons whose only contacts with Illinois were in his official capacity). Therefore, the undersigned recommends Foreign Defendants be granted summary judgment for lack of personal jurisdiction.

        3.    Deliberate Indifference to Serious Medical Needs

Plaintiff claims defendants Crawford, Fish, Massa, Loranth, and Brown (collectively "Williamsburg Defendants") have been deliberately indifferent to his serious medical needs. Specifically, Plaintiff claims that he is entitled to (1) surgeries and additional treatment for his breathing problems, heels spurs, and hemorrhoids; (2) one 300 mg and one 150 mg Wellbutrin pill each day as opposed to three 150 mg pills; and (3) his asthma inhaler.

        a.    Plaintiff's Medical Records

Plaintiff arrived at FCI-Williamsburg with the following listed medical problems: asthma, hypertrophy of nasal turbinates, venereal disease, low back pain (lumbago), post-traumatic stress disorder, bipolar disorder, schizophrenic disorder, nerve pain, compressed toes, obstructive sleep apnea, and bronchitis. [Entry #57-8 at 139]. He was taking six prescribed medications, six over-the-counter medications, and using a CPAP machine for his medical problems. *Id*. On June 24, 2011, defendant Fish performed a comprehensive medical intake screening on Plaintiff. *Id*. at 141–147. All of Plaintiff's medical problems were noted and prescriptions for the medications he was taking were

renewed. *Id*. Plaintiff's June 28, 2011 pulmonary function testing revealed he did not have any restrictive or obstructive airway disease, and his prescription for inhalers was therefore discontinued. *Id*. at 148–151.

On June 30, 2011, Plaintiff requested that his buPropion[3] prescription be changed, which defendant Massa denied. Plaintiff also asked when he would be seen by an Ear, Nose, and Throat (ENT) specialist and requested to see a "foot doctor" because his shoes were too narrow for his wide feet. *Id*. Massa advised him to first see prison officials for proper footwear to be issued. *Id*. Massa provided Plaintiff with prescriptions for acyclovir for his herpes simplex and flunisolide nasal spray to assist in alleviating his obstructive sleep apnea. *Id*.

On August 1, 2011, Massa saw Plaintiff during a sick call appointment, at which time Plaintiff requested a change in his buPropion prescription and wider shoes because of his overlapping toes. *Id*. at 158–160. Massa informed Plaintiff that there was no clinical reason to change his buPropion prescription. *Id*. Massa also initiated a consultation for Plaintiff to be seen by an orthotic specialist to determine if he needed special shoes. *Id*.

On August 9, 2011, Plaintiff was transported to an appointment with a local ENT. [Entry #57-8 at 224–225]. The ENT's examination revealed the nasopharynx was normal, with minimal septal deviation. *Id*. After decongesting Plaintiff's nose, the ENT indicated Plaintiff should have an adequate airway. The ENT further indicated a CT scan of Plaintiff's sinuses may be warranted, that it was unlikely surgery was warranted, and

9

recommended trying a sinus rinse. *Id*.  On August 24, 2011, Massa completed a consultation request for Plaintiff to have a CT scan performed on his sinuses. *Id*. at 67.

On August 25, 2011, Plaintiff requested a rectal exam because he has a loose sphincter which was leaking constantly. *Id*. at 168–170. Massa also initiated a consultation request to have Plaintiff seen by a general surgeon for his rectal incontinence. *Id*.  On August 25, 2011, defendant Loranth noted in Plaintiff's medical record that he had reviewed the ENT's consultation notes and that a CT scan of Plaintiff's sinuses at that time was not required. *Id*. at 170. However, on September 26, 2011, Plaintiff told Loranth that he could not breathe at all through his nose and Loranth requested a CT scan. *Id*. at 175.

On September 21, 2011, Plaintiff was seen by an orthotic specialist who prescribed custom molded inserts, toe separators, and orthopedic boots for Plaintiff's use. *Id*. at 228. Extra wide shoes were provided to Plaintiff on September 29, 2011 and orthopedic boots and other prescribed orthotic devices were provided on October 12, 2012.  *Id*. at 228, 187. On January 24, 2012, Plaintiff told Massa that the special shoes given to him were too big and wanted to know if the orthotic specialist could get him smaller shoes. *Id*. at 198–199.  *Id.* On March 7, 2012, Plaintiff was again seen by the orthotic specialist who agreed to issue a smaller size boot. *Id*. at 207.

On February 9, 2012, a CT scan of Plaintiff's sinuses was performed at a local hospital. [Entry #57-8 at 218]. Results of the CT scan revealed mild to moderate left maxillary sinus mucosal thickening and/or retained secretion with no findings of acute

---

[3] It appears that bupropion is the generic name for Wellbutrin.

10

sinusitis. *Id*. The May 4, 2012 records indicate that there is "some septal deviation." [Entry #81-4]. Additionally, the doctor noted that while a septoplasty could be performed to help open up his nasal airway, he was unsure if this is "really a problem for [Plaintiff] or not." *Id*. Massa did not request a surgery.

On April 4, 2012, Loranth was informed that the 150 mg buPropion tablets that Plaintiff had been taking were no longer available from the manufacturer. *Id*. at 209–210. Loranth approved the prescription to be changed to two 75 mg buPropion tablets to be taken three times a day. *Id*.

        b.        Legal Analysis

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not

meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994).

Here, a review of Plaintiff's medical records reveals that Williamsburg Defendants have provided him sufficient medical care. Plaintiff was seen regularly by Williamsburg Defendants and received treatment for his ailments. Additionally, Plaintiff was taken to outside specialists on several occasions and was provided the CT scans he requested for his sinuses. Plaintiff falsely claims that the ENT "recommended" and "mandated" surgery [Entry #81 at 7–8], but there is no evidence of such a recommendation in the

12

record. Although the ENT noted that he could perform a surgery, he did not indicate that a surgery was necessary or warranted for Plaintiff's condition. [Entry #81-4]. In addition, Plaintiff continues to receive medication for his mental disorders in the same dosage as originally prescribed. Plaintiff has provided no clinical reason why he should be provided a 300 mg tablet instead of two 150 mg tablets. Further, although Plaintiff complains that he is no longer provided an inhaler for his asthma, such decision was made after a pulmonary function test, and Plaintiff's medical records do not indicate that he has suffered any adverse effects as a result. Finally, the medical records reveal that Plaintiff has been treated as necessary for problems related to his heel spurs, compressed toes, and hemorrhoids. He has provided no information that surgery is required for these ailments. Although Plaintiff alleges Defendants' failure to provide him orthopedic footwear until January 2, 2012 caused additional injuries, the exhibits provided do not support these allegations. [Entry #95 at 9; #95-1 at 13]. Therefore, Plaintiff cannot sustain a claim of constitutional magnitude and it is recommended that the Defendants' motion for summary judgment be granted. [Entry #57].

    4.    Additional Pending Motions

Plaintiff has also filed the following motions which remain pending: (1) motion for a temporary restraining order/preliminary injunction [Entry #45]; (2) motion to amend [Entry #46]; (3) motion to conduct a polygraph [Entry #49]; (4) motion to appoint an expert [Entry #55]; (5) motion for an order to show cause [Entry #75]; (6) motion for a preliminary injunction [Entry #76]; (7) motion for a hardship transfer in South Carolina [Entry #80]; and (8) a motion for a preliminary injunction [Entry #82].

Plaintiff's motion to amend [Entry #46] seeks to add additional defendants based on allegations that a fellow prisoner named "Sam" controls other inmates and prison officials retaliate against inmates who do not comply with Sam's orders. "[L]eave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks omitted). Here, Plaintiff's motion is futile because Defendants have asserted, and Plaintiff has not denied, that he has failed to exhaust his administrative remedies with regard to this claim. [Entry #71]. The undersigned also notes that the allegations in the motion to amend do not involve a common nucleus of facts as the instant case, and Plaintiff will therefore not be prejudiced if he is not allowed to litigate the additional claims in this action. Therefore, Plaintiff's motion to amend is denied.

Plaintiff has moved to compel Williamsburg Defendants and non-parties to take a polygraph test, as he alleges their lies caused him to be disciplined. [Entry #49]. To the extent Plaintiff claims Williamsburg Defendants have retaliated against him, he must provide more than mere allegations of retaliation. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, Plaintiff has not brought claims related to this May 18, 2012 disciplinary charge in the instant action and there is no indication he has exhausted his administrative remedies regarding the charge. Therefore, Plaintiff's motion to compel Williamsburg Defendants and non-parties to undergo polygraph tests must be denied. [Entry #49].

14

Plaintiff has also motioned the court for the appointment of a medical expert. [Entry #55]. While Plaintiff may independently hire an expert witness, he is not entitled to have the court hire and pay for an expert witness on his behalf. *See, e.g., Boring v. Kozakiewicz*, 833 F.2d 468, 473–75, (3rd Cir. 1987) (district court not required to pay for plaintiffs' expert medical witness). Therefore, Plaintiff's motion for appointment of an expert witness is denied.

Plaintiff's remaining motions all seek injunctive relief of various kinds, such as transfer to another federal institution within South Carolina, transfer to general population, medical care, mail privileges, and legal material access. Plaintiff does not indicate that he has exhausted his administrative remedies with regard to any of the relief he seeks, and the majority of the injunctive relief requested is not related to the medical care that is the subject of this action.

The court may only grant injunctive, after notice to the adverse party, under strict conditions. Fed. R. Civ. P. 65. A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). A petitioner seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir.2009), overruling *Blackwelder Furniture Co. of*

*Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[1]

After review of Plaintiff's motions, the court finds that he has not demonstrated a clear likelihood of success on the merits. Although Plaintiff makes multiple claims of alleged retaliation, he has not set forth specific allegations showing Defendants have retaliated against him. The Fourth Circuit has directed that claims of retaliation must be regarded with skepticism. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). To prevail upon a claim of retaliation, the inmate must "demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act." *See Huang v. Board of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). Similarly, Plaintiff has not made a clear showing that immediate and irreparable injury, loss, or damage will result. Although Plaintiff claims that Defendants are interfering with his mail and legal access, he has not provided any allegations of prejudice from the alleged constitutional violations, which is required for claims of interference with access to the courts. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). Therefore, because Plaintiff has failed to show a likelihood of success on the merits or made a clear showing of irreparable harm, it is recommended that Plaintiff's motions for injunctive relief [Entry #45, #75, #76, #80, #82] be denied.

---

[1] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, --- U.S. ----, 130 S.Ct. 876 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345–347, stating the facts and articulating the standard for the issuance of preliminary injunctions, before remanding it to the district court for consideration in light of *Citizens United*. *See The Real Truth About Obama, Inc. v. Federal Elections Comm'n*, 607 F.3d 355 (4th Cir. 2010).

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned denies Plaintiff's motion to amend [Entry #46], motion for a polygraph, [Entry #49], and motion to appoint an expert [Entry #55]. IT IS SO ORDERED.

The undersigned recommends granting Defendants' motion to dismiss (construed as a motion for summary judgment) [Entry #57] and denying Plaintiff's motions for various injunctive relief. [Entry #45, #75, #76, #80, #82]. Finally, the undersigned recommends that defendant Lowry be dismissed unless Plaintiff provides good cause for failure to effect service of process on Lowry by the deadline for filing objections to this report.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 27, 2012                                  Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).